On Rev. Code 1919, Sec. 2719, see Annotations Kerr's Cyc. Code, 1920, Code Civ. Pro., Sec. 1905.

---

NEW WAY MOTOR COMPANY, Appellant, v. FARMERS ELECTRO-LIGHTING CO. et al., Respondents.

(201 N. W. 1000.)

(File No. 5114.   Opinion filed January 24, 1925.)

1.  **Sales—Damages—Contracts—Guaranty by Manufacturer to User Accompanying Engines Sold Held to Inure Under Dealer's Contract to His Benefit.**

    Where manufacturer contracted with dealer to furnish engines, with specific guaranty to each purchaser, guaranty inured to benefit of dealer, and its breach was available to him as ground for counterclaim when sued on trade acceptance for price.

2.  **Sales—Evidence—Trial—Exclusion of Evidence as to Modification of Contract of Warranty Between Manufacturer and Dealer Reversible Error.**

    Exclusion of evidence that manufacturer and dealer who purchased ·for resale had modified contract, whereby defective engines were to be repaired, held reversible error, in action by manufacturer on trade acceptance for price, wherein dealer counterclaimed for breach of warranty.

Appeal from Circuit Court, Brown County; Hon. FRANK ANDERSON, Judge.

Action by the New Way Motor Company against the Farmers' Electro-Lighting Company and another. From a judgment for defendants, and from order denying a new trial, plaintiff appeals. Reversed and remanded.

*Dwight Campbell,* of Aberdeen, for Appellant.
*Geo. H. Fletcher,* of Aberdeen, for Respondent.

DILLON, J.   Paintiff's action is to collect on a trade acceptance dated February 11, 1919, in the sum of $534. Defendant pleaded failure of consideration on account of the defects in certain engines purchased from the plaintiff, and counterclaimed for $3,500 damages for breach of warranty.

Defendant, the Farmers' Electro-Lighting Corporation, was organized for the purpose of supplying the demand for farm lighting plants in the vicinity of Aberdeen, and its territory covered many counties of North Dakota and South Dakota. Plaintiff's agent, of the New Way Motor Company, came to Aberdeen to sell engines of its company's manufacture, and was at that time informed of the needs of the defendant for engines and the purpose for which such engines were wanted. On the 11th day of July, 1919, the New Way Motor Company of Lansing, Mich., entered into a written contract with the farmers' Electro-Lighting Corporation wherein it was agreed:

"That the Aberdeen Company should show the New Way engine in their catalogue, and list them as exclusive standard equipment for lighting plans of their manufacture and agreeing to purchase one hundred engines annually to be delivered as ordered."

The order blank contained this provision:

"The company hereby assigns to the dealer the exclusive right to sell New Way outfits at their prevailing prices to users."

A written guaranty was to be delivered to each purchaser as follows:

"The New Way Goes and Goes Right.
"The New Way Guarantee Bond.

"This bond is good without a time limit. It is not for one or five years but for the entire life of the engine.

"We absolutely guarantee that each and every New Way engine goes and goes right, and is capable of working continuous-

ly under its full load without overheating in any climate under the sun, and requires less care and attention than any other engine made.

"This guaranty of high efficiency would be impossible without our special patented New Way cylinders used exclusively by us, which maintain uniformly the proper working temperature within the cylinders, and radiate only the excess heat, thus giving a result that is impossible in any other engine. The New Way Motor Company, W. N. Newbrough, President."

As soon as the engines were installed complaints came in from the customers that the engines were throwing oil, and would run dry and stop from overheating. Two of the defendant's officers went to the factory at Lansing, Mich., and talked with the superintendent concerning these engines. The plaintiff then sent to Aberdeen a representative who attempted to correct the defects in the operation of the engines.

At the trial in November, 1919, the jury returned a verdict for the defendant in the sum of $2,950.95. Judgment was rendered thereon. Appeal was taken from the judgment and order denying a new trial.

[1] Plaintiff insisted that a specific guaranty went with each engine sold; constituted a guaranty to the defendant. This contention is without merit. The contract to the defendant and the one given to each purchaser should be construed together as forming the elements of the completed contract between the parties, and should be binding upon both.

The guaranty given by the plaintiff with every engine sold inured to the benefit of the defendant Farmers' Electro-Lighting Company to the same extent and in the same way that it would inure to the benefit of any purchaser of an engine. This guaranty covered three things: (1) That the engine goes and goes right; (2) that the engine would work continuously under full load without heating; (3) that it requires less care and attentoin than any other engine. The guaranty failed, as shown by the jury's verdict.

It further appeared that the defendant paid the plaintiff $5,-138 for the engines. Also that the defendant bought 30 three horse power engines; 25 of them it had sold, and 5 were in stock. The defendant company agreed with the plaintiff company that

the "New Way Motor Company will send a man from Lansing on February 8th, so as to be in Aberdeen for business on February 10th, and pay his expenses and time while doing the work." The Farmers' Electro-Lighting Corporation agreed to "furnish one man to be with him on all jobs upon which he works." It was agreed that the New Way Motor Company's responsibility should cease after the repairs have been put on these engines and service blanks signed by the owners. The Farmers' Electro-Lighting Company agreed to make them in consideration of being released from liability. The defendant produced slips showing that this work was done by the plaintiff pursuant to this contract on 21 engines, which included all the engines sold by defendant, except 4.

[2]  It further appeared that 5 or 7 engines were returned to the company, and that the company replaced 15 to 18 engines. These parties had the right to make a modification of their own contract which provides for plates, felts, and breathers for the purpose of changing these engines. Their attempt to do so is embodied in Exhibit 10. This exhibit was stricken from the evidence. We think the striking out of this exhibit was a prejudicial error. We likewise think that upon the trade acceptance that plaintiff was entitled to recover the $549.05, and that the defendant was entitled to an allowance for the value of the 22 engines. There had been modifications made in the type of the other 11 engines referred to, but the defendant did not show what became of the other 11 engines, what damage resulted to the defendant, and that the evidence presented no real defense as to the amount due to the plaintiff on the trade acceptance. Certainly plaintiff should not be held to pay for the engines which it had repaired as agreed and for which the defendant had agreed to release it. We fail to find any testimony to sustain any part of the defendant's alleged counterclaim. The verdict should have been for the plaintiff on its trade acceptance.

We hold that a great portion of the verdict for the defendant was unauthorized by any evidence, and that in the striking out of Exhibit 10 the court erred, and for that reason the case should be reversed and a new trial ordered.

GATES, J. I concur in the result. I think the trial court should have directed a verdict for plaintiff upon the ground that defendant had not proved a legal damage.

POLLEY, P. J. I concur in the reversal of the judgment appealed from.

ANDERSON, J., not sitting.